REID, Judge.
Plaintiff, Frank Dimke, appeals from a judgment dismissing his suit brought against Wade J. Gamier and Dr. William V. Gamier, d/b/a Fairview Kennels for $1052.00, plus wages amounting to $300.00 per month from August 1, 1959 until paid. Plaintiff alleged that he was employed by defendants on August 1, 1958 to train dogs and transport them to field trials in Canada and the United States at a salary of $300.00 per month, payable $50.00 a week, plus all expenses. Plaintiff further alleged that Wade J. Gamier withheld $100.00 a month from his salary but the Garniers guaranteed by written agreement to pay plaintiff not less than $3600.00 a year.
Plaintiff further alleged he resigned on August 1, 1959 at which time he requested that the balance of his wages, amounting to $1052.00 be paid. When defendants refused payment plaintiff instituted this suit.
Defendants admit they employed plaintiff, but deny any wages were due him. They contend in July 1958, plaintiff and defendant Wade J. Gamier discussed plaintiff’s employment by defendants as a dog trainer and defendants offering him a minimum salary of $3600.00 a year submitted a proposal in writing. This offer was not accepted by the plaintiff. Subsequently, on the same day, another contract in writing was signed by Wade Gamier by which plaintiff was to be employed as a dog trainer at a drawing account of $50.00 per week, plus-14 of all purses, sales, stud fees and so forth, realized from the field trials, although the animals remained the property of the defendants. This contract was not accepted by Dimke, or signed by him. Defendants allege in their answer that although the first offer and Contract were not accepted the agreement set out in P-1 was the final agreement between the parties, and yet they offered another agreement made on the same day and signed by Wade J. Gamier, individually and on behalf of Dr. William V. Gamier, and also by plaintiff Frank Dimke, Exhibit D-7 by *95 which Dimke was to receive 14 of all purses won, sales, stud fees etc., and in addition a drawing account of $50.00 a week and be reimbursed for all expenses.
Defendants allege they paid plaintiff from August 1, 1958 through August 1, 1959 a total of $4052.31, and in addition, they set up numerous claims for overcharges and reimbursements bf certain expenses which were not supported by receipts of any kind. In addition they contend in the month of December, 1958, plaintiff at a field trial handled a gun in a careless manner and very nearly shot Mrs. William V. Gamier, her horse and one of the fine dogs, and that thereafter the partnership between Wade J. Gamier and Dr. William V. Gamier was dissolved insofar as any further dealings with plaintiff Dimke. Dr. Gamier further alleged he had to employ a trainer at an expense of $1750.00. Defendants further claim the cost of rent of a dwelling, feed for plaintiff’s horses, and reimbursement for a motor for plaintiff’s truck and asked for judgment in reconvention for a total of $3576.51. Defendants further alleged in their answer that a check was given to plaintiff on December 18, 1958 for the sum of $367.06 which bore the notation:
“In full to Saturday December 12, 1958”
and contend that plaintiff is estopped to claim any amount due prior to the date of the check.
Subsequently, plaintiff filed a supplemental petition alleging that he was paid only $2156.62 on his drawing account, which, deducted from the amount guaranteed in the contract of $3600.00, left a balance due of $1443.38 and prayed for judgment for this amount, plus penalties and attorneys fees.
The Judge of the Lower Court, without assigning reasons for judgment, rendered judgment in favor of defendants, rejecting plaintiff’s demands and dismissing this suit at his costs. The reconventional demand of defendants was also dismissed. Plaintiff filed motion for new trial or rehearing,, which motion was overruled. Plaintiff' thereafter appealed to this Court from said: judgment.
Mr. Wade J. Gamier died on August 21, 1963 and by written motion Mrs. Dorothy Sanders Gamier was substituted as defendant for her husband, Wade J. Gamier.
Defendants filed an answer to the appeal: asking that the judgment be affirmed insofar as it dismissed plaintiff’s suit but praying that it be amended to award them' $3576.51 with legal interest from judicial demand.
Plaintiff makes the following assignments of error:
“I.
“Since the District failed to assign' any written reasons for judgment, we cannot assign any particular errors-with reference to the findings of the-Court. However, we do find that the Lower Court erred in not taking into-account the evidence of the defendants’ guaranteeing to plaintiff that he would receive not less than $3,600.00 per year-including what he drew from the Fair-view Kennels.
“II.
“The second assignment of error is-that the trial Court completely ignored’ the jurisprudence (to the effect that in) on construing contracts as regards-the person who obligates himself in a contract. Any doubts as to the provisions of the contract will be construed against the’ person contracting the-obligation. It also ignored or disregarded the jurisprudence by failing-to recognize the fact that employment contracts can be entered into on a yearly basis, and that a guarantee of a minimum amount per year in an employment contract is valid.”
It was Mr. Dimke’s interpretation of the contract that he was to draw $50.00 a week *96 with the guarantee of $3600.00 a year. Of this amount $1,000.00 was to he withheld as a bonus for the end of the year. Mr. Dimke denies he signed the contract although he admits it is his signature placed thereon. By consent a handwriting expert was appointed and he identified the signature as that of plaintiff. This agreement only provided for a drawing account of $50.00 per week. This is the only contract which is signed by both parties and is the one this Court used in interpreting the agreement between the parties. This contract does not provide for any termination date and makes no mention of $1000.00 being held back for a bonus.
Mr. Dimke was paid $4172.31 on his advances and drawing account. Records, checks and accounts supporting this were offered in evidence. Adding machine tape introduced in evidence shows the amount of $2015.60 had been allotted as expenses paid, and $2156.62 to salary paid, $255.00 is added as truck motor, totaling $2411.52 as the amount paid to Mr. Dimke.
Mr. Wade Gamier, who handled the transaction. for defendants, testified Mr. Dimke signed the agreement which was the final contract between the parties. He further testified that the other two contracts were merely preliminary outlines and were not signed by Mr. Dimke and did not set forth the final agreement. He also testified that shortly after his brother withdrew from the contract he (Wade Gamier) called Mr. Dimke in and had a talk with him, informing him that he was not financially able to carry on the deal by himself and he would appreciate it if Mr. Dimke would look around and find something else. He suggested that Mr. Dimke might find other dogs to train to help out. Mr. Gamier in relation to overcharges set out in recon-ventional demand testified:
“Q: When we got the checks and figured up what had been paid and what was due, did we find as a matter of fact that you had overpaid Mr. Dimke?
“A: Yes ma’m. You figured it all up and checked into a few things that were errors, or discrepancies, or whatever you might want to term it and some of them were serious.
“Q: Among the bills which Mr. Dimke submitted to you and which you paid did you discover duplicates of charge slips where gasoline and oil had been charged to your credit card, or your brother’s credit card, and which you also paid to Mr. Dimke?
“A: Miss Mary, right at this moment I can’t remember that, I do remember this, there were some other things there that we checked into that we couldn’t prove out at that time and that since then he has brought receipts up here to show about two years later, but at that time we couldn’t prove them out and one of them I particularly remember was a hay bill, and another was a $68.00 refund from the Canadian border patrol, and well, those things I remember right now, and the others I can’t remember, that has been over two years ago.”
In their reconventional demand the Garniers claim rent of the dwelling house and the amount paid by Dr. William V. Gamier for a trainer. There was nothing in the agreement pertaining to rent and, with reference to the claim for hiring another trainer, the testimony of Mr. Sutiles, the trainer employed establishes Mrs. William V. Gamier was the one who employed Mr. Suttles and not Dr. Gamier.
With reference to the guarantee by Mr. Wade Gamier the same is indefinite and could be interpreted that plaintiff would be paid at a rate of $3600.00 per year. It has no termination and according to testimony of Mr. Wade Gamier he terminated Mr. Dimke’s employment immediately after the altercation between plaintiff and Dr. *97 Gamier, but retained him on at a monthly basis. Mr. Dimke was paid in full on December 12, 1958. According to a statement dated subsequent to December 12, 1958 Mr. Dimke drew 33 checks for $50.00 each. The contract terminated on August 1, 1959 and there would be a total of 29 weeks subsequent to this settlement in full on December 12, 1958. Of course some of this may be allotted to his expenses but the Court is unable to determine definitely from the record.
The Court is of the opinion there is not sufficient evidence to warrant judgment to the plaintiff, nor the defendant in recon-vention, and therefore the judgment of the Lower Court is affirmed.
Affirmed.
ELLIS, J., recused.